IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kareem Sampson,              :
             Petitioner     :
                           :
     v.                    :
                           :
Pennsylvania Parole Board,    :   No. 615 C.D. 2025
             Respondent   :   Submitted: February 24, 2026

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE STELLA M. TSAI, Judge
              HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE TSAI                    FILED: March 23, 2026

Petitioner Kareem Sampson (Sampson) petitions for review of an order of the Pennsylvania Parole Board (Board). The Board denied Sampson's request for administrative relief, thereby rejecting his challenge to the timeliness of the Board's revocation hearing and aspects of the Board's recalculation of his parole violation maximum date. For the reasons set forth below, we now affirm.

A complete history of Sampson's incarceration is not necessary. For our purposes, we note that the Board, by decision recorded on August 13, 2009, granted parole to Sampson and calculated his maximum sentence date as April 13, 2012. Certified Record (C.R.) at 9-10. Sampson was released on September 10, 2009, from State Correctional Institution (SCI)-Smithfield. *Id.* at 12, 27.

Philadelphia Police arrested Sampson on March 20, 2011, on firearm charges. *Id.* at 25, 27. The Board declared Sampson delinquent on March 30, 2011. *Id.* at 18. On May 17, 2011, the Board issued an order to detain Sampson pending resolution of those state charges. *Id.* at 19. On July 19, 2011, federal authorities

indicted Sampson on a firearm possession charge in relation to the March 20, 2011 arrest. *Id.* at 73. Beginning on August 17, 2011, Sampson was detained in the Philadelphia Federal Detention Center for the federal criminal case. *Id.* On August 22, 2011, Sampson stipulated to pretrial detention in the federal criminal case. *Id.* The state charges were *nolle prossed* on January 3, 2012. *Id.* at 28. On February 20, 2013, the Board declared Sampson delinquent for state control purposes after the expiration of his then-outdated maximum sentence date. *Id.* at 20. On July 11, 2014, Sampson pled guilty to the federal charges. *Id.* at 22, 26, 28, 50-51. Thereafter, the Board lodged a detainer on December 4, 2015, for parole violations, noting that Sampson's original maximum sentence date was April 13, 2012, but that it would be extended due to a new conviction, with the new maximum sentence date being computed at a future date. *Id.* at 21. Sampson was sentenced to 15 years' incarceration in federal prison on January 6, 2016. *Id.* at 22, 26, 28, 50-51. Sampson satisfied the carceral portion of his federal sentence on September 12, 2024, and federal authorities returned him from federal custody on September 14, 2024. *Id.* at 28, 87.

On December 9, 2024, the Board conducted a revocation hearing. *Id.* at 29-49. By decision recorded January 7, 2025, the Board recommitted Sampson as a convicted parole violator to serve a recommitment period of 24 months. *Id.* at 93-94. In so doing, the Board calculated his parole violation maximum date as May 30, 2026. *Id.* Sampson sought administrative relief, which the Board denied on April 22, 2025. *Id.* at 95-120, 121-124. As to the timeliness of the hearing, the Board explained:

> With respect to timeliness of the revocation hearing, the Board's regulation provides that "If a parolee is confined outside the jurisdiction of the Department of Corrections, such as . . . confinement in a federal facility where the parolee has not waived the right to a revocation

hearing by a panel in accordance with *Commonwealth ex rel. Rambeau v. Rundle*, . . . 314 A.2d 842 ([Pa.] 1973), the revocation hearing shall be held within 120 days of the official verification of the return of the parolee to a state correctional facility." 37 Pa. Code § 71.4(1). Following your return to an SCI on September 14, 2024, the Board conducted a revocation hearing 86 days later on December 9, 2024. As there is no indication that you ever waived your right to a panel hearing prior to your return to the SCI, the revocation hearing is therefore timely.

*Id.* at 122. The Board also provided an explanation as to how it arrived at its calculation of Sampson's parole violation maximum date. *Id.* at 121-124. Sampson then petitioned this Court for review.

On appeal to this Court,[1] Sampson argues that the Board failed to grant him a timely revocation hearing.[2] In presenting this argument, Sampson relies on Section

---

[1] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. 2 Pa. C.S. § 704.

[2] Sampson did not include a "statement of questions presented" in his brief, and the Board argues that we should quash his appeal for failure to preserve any issues. In asserting this argument, the Board relies upon Pennsylvania Rules of Appellate Procedure 2111(4) and 2116, as well as our decision in *Wicker v. Civil Service Commission*, 460 A.2d 407, 409 (Pa. Cmwlth. 1983). Pennsylvania Rule of Appellate Procedure 2111(4) directs that all briefs shall include a statement of questions involved. Pennsylvania Rule of Appellate Procedure 2116 sets forth the requirements for statement of questions and provides, in part, that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby." In *Wicker*, this Court quashed an appeal based on an appellant's brief that was substantially defective and emphasized that inclusion of a statement of questions is mandatory. We have also held, however, that when "[t]he Court is able to perceive the issues that [the appellant] wishes to raise from the arguments made, . . . the Court [may] choose[] not to deem the arguments to be waived on the basis of this defect." *Cash America Net of Nevada, LLC v. Dep't of Banking*, 978 A.2d 1028, 1032 n.1 (Pa. Cmwlth. 2009), *affirmed*, 8 A.3d 282 (Pa. 2010); *see also Laster v. Unemployment Comp. Bd. of Review*, 295 A.3d 17, 21 (Pa. Cmwlth. 2023) (holding that despite the claimant's failure to include the only issue before the court in the statement of questions involved, the court would consider the issue because it was included in the summary of argument and argument sections of the claimant's brief). In this instance, Sampson's brief contains the other requisite sections required by Rule 2116, including a well-developed ten-page argument section with citations to cases, addressing the timeliness of the Board's revocation hearing. Moreover, the issue of timeliness is addressed

6138 of the Prisons and Parole Code (Parole Code), 61 Pa. C.S. § 6138. More specifically, Samspon argues that, pursuant to Section 6138(a)(5.1) of the Parole Code, he should have completed the balance of his initial state sentence before he began serving his federal sentence. Sampson relies on this Court's decision in *Fumea v. Pennsylvania Board of Probation and Parole*, 147 A.3d 610 (Pa. Cmwlth. 2016), arguing that because the Board failed to assert jurisdiction over him at the federal sentencing to ensure that he served his sentences pursuant to the statutory order of sentences set forth in Section 6138(a)(5.1) of the Parole Code, the Board's revocation hearing was untimely. The Board counters that its decision should be affirmed pursuant to this Court's decision in *Brown v. Pennsylvania Board of Probation and Parole*, 184 A.3d 1021 (Pa. Cmwlth. 2017).

Section 6138(a)(1) of the Parole Code authorizes the Board to, "at its discretion, revoke the parole of a paroled offender if the offender, during the period of parole . . . , commits a crime punishable by imprisonment, for which the offender is convicted or found guilty . . . or to which the offender pleads guilty." 61 Pa. C.S. § 6138(a)(1). Sampson focuses on Section 6138(a)(5.1) of the Code, which provides that "[i]f the offender is sentenced to serve a new term of total confinement by a Federal court or by a court of another jurisdiction because of a verdict or plea under paragraph (1) the offender shall serve the balance of the original term before serving the new term." 61 Pa. C.S. § 6138(a)(5.1).

It is well established that "[d]ue process requires that a parolee receive a timely hearing after he is taken into custody for a parole violation." *Dill v. Pa. Bd. of Prob. & Parole*, 186 A.3d 1040, 1044 (Pa. Cmwlth. 2018), *appeal denied*, 207

---

throughout the appropriate sections of his brief and was raised before the Board. For these reasons, we will consider this issue.

A.3d 287 (Pa. 2019). To that end, Section 71.4(1)(i) of the Board's regulations sets forth procedures for recommitment and provides, in relevant part:

The following procedures shall be followed before a parolee is recommitted as a convicted [parole] violator:

(1) A revocation hearing shall be held within 120 days from the date the Board received official verification of the plea of guilty or nolo contendere or of the guilty verdict at the highest trial court level except as follows:

(i) *If a parolee is confined outside the jurisdiction of the Department of Corrections, such as confinement . . . in a Federal correctional institution or confinement in a county correctional institution where the parolee has not waived the right to a revocation hearing by a panel in accordance with Commonwealth ex rel. Rambeau v. Rundle, . . . 314 A.2d 842 ([Pa.] 1973), the revocation hearing shall be held within 120 days of the official verification of the return of the parolee to a State correctional facility.*

37 Pa. Code § 71.4(1)(i) (emphasis added). Section 71.5 of the Board's regulations addresses parolees in federal custody and offers additional guidance. It provides:

(a) If the parolee is . . . in Federal custody, the Board may lodge its detainer *but other matters may be deferred until the parolee has been returned to a State correctional facility in this Commonwealth*.

. . . .

(c) In determining the period for conducting hearings under this chapter, there shall be excluded from the period, a delay in any stage of the proceedings which is directly or indirectly attributable to one of the following:

(1) *The unavailability of a parolee* or counsel.

37 Pa. Code § 71.5(a), (c)(1) (emphasis added). "When a parolee challenges the timeliness of a revocation hearing, the Board has the burden of proving by a preponderance of the evidence that the hearing was, in fact, timely." *Brown*, 184 A.3d at 1025.

5

In *Brown*, we considered the interplay of Section 6138(a)(5.1) of the Parole Code and the above regulations. Brown, like Sampson, was arrested on state charges while on parole and confined in a county jail, and the Board issued a detainer against him. *Id.* at 1022. The state charges against Brown were withdrawn, and federal authorities indicted Brown on federal charges and confined him in a federal facility, similar to the circumstances in this case. *Id.* Brown pleaded guilty, was sentenced to federal confinement, and imprisoned in a federal facility. *Id.* The Board received official verification of Brown's federal conviction five days after sentencing. *Id.* at 1022-23. He remained in federal custody until the expiration of his federal sentence, at which time he returned to the custody of the Board and a parole revocation hearing was held within 120 days thereafter. *Id.* at 1023. Brown argued that his parole revocation hearing was untimely. This Court held that under the Board's regulations,

> when a parolee is in federal custody, confined in a federal facility, or is otherwise unavailable, the Board's duty to hold a revocation hearing, or take other action beyond issuing a detainer, is deferred until the parolee is returned to a[n] SCI regardless of when the Board received official verification of a parolee's new conviction.

*Id.* at 1025. The Court recognized that Brown was "*unavailable to the Board* when he pled guilty and was sentenced, as well as when it received official verification of his conviction." *Id.* at 1027 (emphasis in original).

Here, *Brown* is controlling. The record establishes that Sampson was in federal custody before and after his federal sentencing, as well as when the Board received official verification of his conviction. Sampson's arguments to the contrary that the Board had jurisdiction over him and he was available to the Board at the time of his federal conviction, such that the Board's failure to invoke its jurisdiction violated the Parole Code and deprived him of due process, is not based in fact or

6

law. As we wrote in *Dill*, "the Board does not have 'the power to pluck a Pennsylvania parolee from a federal prison for the purpose of recommitting him as a parole violator.'" *Dill*, 186 A.3d at 1046 (quotation omitted). As Sampson's panel revocation hearing was held within 120 days of when he first became available to the Board, Sampson's timeliness argument lacks merit.

*Fumea*, upon which Sampson relies, is factually distinguishable from *Brown* and inapposite to the facts now before this Court. Fumea was arrested and indicted by federal authorities while he was on parole with the Board. Fumea, unlike Brown or Sampson, posted bond on his federal charges. *Fumea*, 147 A.3d at 611. The Board subsequently detained Fumea pending disposition of those charges, but he was released to the community after the expiration of his maximum sentence. *Id.* A federal jury found Fumea guilty in July 2011, although he remained on bond until his sentencing in November 2011. *Id.* at 612. Although a Board agent was present at his sentencing and the Board issued a warrant to detain him that same day, the Board failed to take him into custody, and he was instead remanded to the custody of federal authorities. *Id.* Fumea was released from federal custody in December 2014 and was returned to an SCI. *Id.* We held that, despite the expiration of his maximum sentence date, the Board retained jurisdiction to recommit Fumea as a convicted parole violator pursuant to Section 6138(a)(1) of the Parole Code, and, importantly, he became available to the Board upon his conviction in federal court. *Id*. at 616. This Court in *Brown* distinguished the circumstances in *Brown* from *Fumea* and noted that the Board had "actual knowledge of [Fumea's] conviction, as evidenced by the agent's presence at his sentencing hearing," and that Fumea was not in federal custody from the time of his guilty verdict through his sentencing hearing. *Brown*, 184 A.3d at 1027. As a result, Fumea was available to the Board

7

at that time, whereas Brown was not available to the Board after his trial. The same distinctions the Court in *Brown* drew as to Fumea may be drawn between Sampson and Fumea. Thus, *Fumea* is not applicable here.

For these reasons, the order of the Board is affirmed.

_____

STELLA M. TSAI, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kareem Sampson,                          :
                      Petitioner         :
                                         :
          v.                             :
                                         :
Pennsylvania Parole Board,               :
                      Respondent         :    No. 615 C.D. 2025

## **O R D E R**

AND NOW, this 23rd day of March, 2026, the order of the Pennsylvania Parole Board is AFFIRMED.

_____
STELLA M. TSAI, Judge