IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kenneth Williams,                          :
               Petitioner     :
                        :
    v.                                 :     No. 152 C.D. 2021
                        :     Submitted: August 6, 2021
Pennsylvania Parole Board,                 :
             Respondent      :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE LEAVITT                       FILED: December 14, 2021

        Kenneth Williams, an inmate at the State Correctional Institution (SCI) at Frackville, petitions for review of an adjudication of the Pennsylvania Parole Board (Parole Board) denying his administrative appeal of a Parole Board decision that recommitted him to serve 24 months of backtime as a convicted parole violator; denied him credit for the time he spent at liberty on parole; and recalculated his maximum sentence date as June 30, 2032. Williams asserts that the Parole Board did not hold a timely parole revocation hearing; improperly required him to serve his federal sentence prior to his state sentence; and did not give him credit for all the time he served while incarcerated solely on the Parole Board's warrant. Williams' appointed counsel, Kent D. Watkins, Esquire (Counsel), of the Schuylkill County Public Defender's Office, has filed an application to withdraw as Williams' counsel and a letter asserting that Williams' appeal lacks merit. For the following reasons, we grant Counsel's application and affirm the Parole Board's adjudication.

In 1991, Williams was ordered by the Montgomery County Court of Common Pleas to serve a sentence of 5 to 20 years in an SCI for a robbery conviction, which sentence was to be served consecutive to a Philadelphia County sentence Williams was already serving. Williams became available to begin serving the Montgomery County sentence on October 29, 1992, resulting in a maximum sentence date of October 29, 2012.

On June 1, 1999, Williams was paroled to a community corrections center and was successfully discharged on December 3, 1999. On July 10, 2001, Philadelphia police arrested Williams and charged him with forgery, identify theft, theft by unlawful taking, and theft by deception. Williams did not post bail. The Parole Board lodged a warrant on July 12, 2001, to detain Williams pending disposition of the new criminal charges. On May 24, 2002, the new criminal charges were *nolle prossed*. Thereafter, on June 9, 2002, the Parole Board lifted its warrant and Williams remained on parole.[1]

On August 23, 2012, Philadelphia police arrested Williams and charged him with criminal conspiracy, theft by receiving stolen property, and resisting arrest. Williams did not post bail. The Parole Board lodged a warrant on August 24, 2012, to detain Williams pending disposition of the new criminal charges. On October 29, 2012, the Parole Board lifted its warrant because Williams' original maximum sentence had expired. It continued to follow Williams' outstanding criminal charges.

In early 2014, federal authorities detained Williams on the 2012 criminal charges and subsequently charged him with federal crimes. On May 25,

---

[1] Williams' effective date of parole remained June 1, 1999.

2016,[2] Williams pled guilty to the federal charges of conspiracy to commit robbery which interferes with interstate commerce (offense ending date 8/22/2012); robbery which interferes with interstate commerce and aiding and abetting (offense ending date 1/9/2012); robbery which interferes with interstate commerce and aiding and abetting (offense ending date 2/22/2012); and using and carrying a firearm during a crime of violence and aiding and abetting (offense ending date 2/22/2012). Williams was committed to the Federal Bureau of Prisons to serve a 90-month sentence of imprisonment, followed by 5 years of supervision, and ordered to pay restitution.

On February 8, 2017, the Parole Board received official verification of Williams' new convictions and issued an arrest warrant the same day, indicating that although his maximum sentence date of October 29, 2012, had passed, the date was being extended due to his new federal conviction, and that a new maximum date would be calculated upon recording of the Parole Board's final action. Williams remained in federal prison at the Federal Correctional Institution at Schuylkill until his release and return to state custody on March 4, 2020.

On May 5, 2020, the Parole Board notified Williams that a revocation hearing would be held based on his 2016 federal convictions. Williams waived his right to a panel hearing. Counsel entered his appearance on Williams' behalf on May 27, 2020, and the revocation hearing was held before a hearing examiner the same day.

At the hearing, documentation was admitted establishing Williams' 2016 federal convictions and his return to state custody on March 4, 2020. Counsel did not challenge the convictions but stated that Williams believed his return to state custody occurred on March 5, 2020. Williams then testified regarding his time on

---

[2] The criminal judgment was signed on June 14, 2016, and filed on June 15, 2016.

parole, stating that he had a job as a machine operator in 1999 and supported his three children. When he was arrested in 2012, he lost his job. He claims that other than the arrest, he was "clean the whole time [he was on parole]." Notes of Testimony, 5/27/2020, at 13; Certified Record at 72.

By decision recorded on June 18, 2020,[3] the Parole Board recommitted Williams as a convicted parole violator to serve 24 months' backtime. The Parole Board, in its discretion, denied Williams credit for the time he spent at liberty on parole because his new conviction was the same as, or similar to, his original offense and it involved possession of a weapon. Williams' maximum sentence date was recalculated as June 30, 2032.

Counsel filed an administrative appeal on Williams' behalf raising three issues. First, Williams claimed that the Parole Board failed to hold the revocation hearing within 120 days of official verification of his conviction or his return to an SCI. Second, Williams asserted that he should have served his state sentence before serving his federal sentence. Third, Williams argued that the Parole Board failed to give him credit for all the time that he served exclusively on the Parole Board's warrant.

On February 5, 2021, the Parole Board affirmed its decision recorded on June 18, 2020. First, the Parole Board explained the timeline of Williams' case and noted that Williams was returned to state custody on March 4, 2020. Thus, because the revocation hearing was held 84 days later on May 27, 2020, the hearing was timely. The Parole Board next explained that in recalculating Williams'

---

[3] The decision lists a mailing date of July 10, 2020, with a line drawn through it, and the date October 2, 2020, was added. C.R. 95. However, the decision must have been mailed prior to the October date because the Parole Board received Williams' administrative appeal on August 13, 2020.

4

maximum sentence date, it had the discretion not to award credit for any time spent at liberty on parole. *See* Section 6138(a)(2) of the Prisons and Parole Code (Parole Code), 61 Pa. C.S. §6138(a)(2).[4] The Parole Board then explained its recalculation of his maximum sentence date. When Williams was paroled on June 1, 1999, his maximum sentence date was October 29, 2012, which left 4,899 days remaining on his original sentence. The Parole Board awarded Williams credit for the 332 days he was *confined* from July 12, 2001 (Parole Board warrant date), to June 9, 2002 (date Williams was released). Subtracting 332 from 4,899 days resulted in a total of 4,567 days remaining on Williams' original sentence. The Parole Board also awarded Williams presentence confinement credit for 66 days from August 24, 2012 (Parole Board warrant date), to October 29, 2012 (date detainer expired), because Williams was held solely on the Parole Board's warrant during that period. Subtracting 66 from 4,567 days left 4,501 days remaining on Williams' original sentence. The Parole Board observed that Williams completed his federal sentence and was returned to the Parole Board's custody on March 4, 2020, and thus became available to serve his original sentence on that date. Adding 4,501 days to that date yielded a maximum sentence date of June 30, 2032. The Parole Board did not address Williams' challenge to the order of service of his sentences.

---

[4] It states:

> If the parolee's recommitment is so ordered, the parolee shall be reentered to serve the remainder of the term which the parolee would have been compelled to serve had the parole not been granted and, except as provided under paragraph (2.1), shall be given no credit for the time at liberty on parole.

61 Pa. C.S. §6138(a)(2). We note that various sections of the Parole Code, including Section 6138(a)(2), have recently been amended by the Act of June 30, 2021, P.L. 260, No. 59. As such, any citations to the Parole Code in this opinion are to the version of the Parole Code that existed prior to the recent amendments.

Williams petitioned for this Court's review of the Parole Board's adjudication,[5] raising three issues.[6] First, he asserts that his revocation hearing was not timely held. Second, he contends that his state sentence should have been served prior to his federal sentence. Third, he argues that the Parole Board failed to give him credit towards his original sentence for all the time he served exclusively on the Board's warrant. Counsel has filed an application to withdraw along with a letter asserting that Williams' claims lack merit.

In *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988), our Supreme Court set forth the technical requirements that appointed counsel must meet in order to withdraw from representation of a parolee. This Court has summarized the requirements as follows:

> [C]ounsel seeking to withdraw from representation of a petitioner seeking review of a determination of the Board must provide a "no-merit" letter[,] which details "the nature and extent of [counsel's] review and list[s] each issue the petitioner wished to have raised, with counsel's explanation of why those issues are meritless."

*Zerby v. Shanon*, 964 A.2d 956, 961 (Pa. Cmwlth. 2009) (citing *Turner*, 544 A.2d at 928). Counsel must also send the parolee a copy of the "no-merit" letter that satisfies the *Turner* requirements, furnish him with a copy of counsel's petition to withdraw, and inform the parolee of his right to retain new counsel or submit a brief on his own behalf. *Reavis v. Pennsylvania Board of Probation and Parole*, 909 A.2d 28, 33 (Pa. Cmwlth. 2006). If counsel has fully complied with the technical requirements

---

[5] On review, this Court determines whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *McCloud v. Pennsylvania Board of Probation and Parole*, 834 A.2d 1210, 1212 n.6 (Pa. Cmwlth. 2003).

[6] We have reordered Williams' issues for ease of discussion.

6

for withdrawal, the Court will independently review the merits of the inmate's claims.

We conclude that Counsel's no-merit letter satisfies the *Turner* requirements because it addresses each issue raised in Williams' appeal. The record establishes that Counsel sent Williams copies of the application to withdraw and no-merit letter and advised Williams of his right to retain new counsel or proceed with his appeal *pro se*.[7] Because the *Turner* requirements have been met, we address the merits of the underlying claims.

We first address Williams' argument that his revocation hearing was untimely. Williams' exact argument in this regard is not entirely clear. Nevertheless, we note that where a parolee challenges the timeliness of a revocation hearing, the Parole Board bears the burden of proving that the hearing was timely held. *Dill v. Pennsylvania Board of Probation and Parole*, 186 A.3d 1040, 1043 n.2 (Pa. Cmwlth. 2018). In its decision, the Parole Board relied on its regulation that requires the hearing to be held within 120 days of the Board's receipt of official verification of a conviction, with certain exceptions. The Parole Board's regulation states, in relevant part, as follows:

> The following procedures shall be followed before a parolee is recommitted as a convicted violator:
>
> (1) A revocation hearing shall be held within 120 days from the date the Board received official verification of the plea of guilty or nolo contendere or of the guilty verdict at the highest trial court level *except as follows*:
>
>> (i) *If a parolee is confined outside the jurisdiction of the Department of Corrections, such as* confinement out-of-State, *confinement in a Federal*

---

[7] Williams has not retained new counsel or filed a brief on his own behalf.

> *correctional institution* or confinement in a county correctional institution where the parolee has not waived the right to a revocation hearing by a panel in accordance with *Commonwealth ex rel. Rambeau v. Rundle*, 455 Pa. 8, 314 A.2d 842 (1973), *the revocation hearing shall be held within 120 days of the official verification of the return of the parolee to a State correctional facility*.

37 Pa. Code §71.4(1)(i) (emphasis added). Section 71.5(a) and (c)(1) of the Parole Board's regulations provides additional guidance as follows:

> (a)  *If the parolee is in . . . Federal custody*, the Board may lodge its detainer but *other matters may be deferred until the parolee has been returned to a State correctional facility* in this Commonwealth.
>
> \* \* \*
>
> (c)  In determining the period for conducting hearings under this chapter, *there shall be excluded from the period, a delay in any stage of the proceedings which is* directly or indirectly *attributable to* one of the following:
>
> > (1)  *The unavailability of a parolee or counsel*.

37 Pa. Code §71.5(a), (c)(1) (emphasis added). The Parole Board's regulations are clear. "[W]hen a parolee is in federal custody, confined in a federal facility, or is otherwise unavailable, the [Parole] Board's duty to hold a revocation hearing, or take other action beyond issuing a detainer, is deferred until the parolee is returned to a[n] SCI[, and is again under the jurisdiction of the Pennsylvania Department of Corrections,] regardless of when the [Parole] Board received official verification of a parolee's new conviction." *Brown v. Pennsylvania Board of Probation and Parole*, 184 A.3d 1021, 1025 (Pa. Cmwlth. 2017).

8

Here, Williams pled guilty and was sentenced in federal court to a new term of federal incarceration on May 25, 2016, and he was thereafter committed to the custody of the Federal Bureau of Prisons and transferred to the Federal Correctional Institution at Schuylkill. Williams remained in federal custody until March 4, 2020, when he was returned to an SCI. Williams thus became available to the Parole Board on March 4, 2020, upon his release from federal prison. His May 27, 2020, revocation hearing was held 84 days after his March 4, 2020, return to an SCI. It was timely held. The Parole Board did not err in so holding, and Williams' first claim of error lacks merit.

Williams next claims that his state sentence should have been served prior to his federal sentence.[8] We disagree. At the time Williams was sentenced in federal court on May 25, 2016, Section 6138(a)(5.1) of the Parole Code provided as follows with regard to the order of service of sentences:

> (5.1) If the parolee is sentenced to serve a new term of total confinement by a Federal court or by a court of another jurisdiction because of a verdict or plea under paragraph (1), the parolee shall serve the balance of the original term before serving the new term.

61 Pa. C.S. §6138(a)(5.1). There is no question that Section 6138(a)(5.1) prescribes the order in which a parolee, such as Williams, must serve his sentences. However, the circumstances of the instant matter establish that Williams was not entitled to

---

[8] In his no-merit letter, Counsel cites numerous federal district court decisions for the proposition that state authorities retain primary jurisdiction over an inmate and that federal custody does not commence until state authorities relinquish the inmate on satisfaction of the state obligation. *See* No-Merit Letter at 4-6 (citing, *inter alia*, *Rios v. Wiley*, 201 F.3d 257 (3d Cir. 2000)). While such decisions may be persuasive, we note that they are not binding authority. *Byers v. Pennsylvania Department of Banking and Securities, Bureau of Securities Compliance and Examinations*, 259 A.3d 551, 561 n.9 (Pa. Cmwlth. 2021).

serve his backtime on his original state sentence prior to serving his new federal sentence, as set forth in Section 6138(a)(5.1) of the Parole Code. Our decision in *Brown*, 184 A.3d 1021, is instructive on this point.

In *Brown*, the parolee was on state parole when he was indicted on federal drug charges. He remained in federal custody from the time of his arrest by federal authorities until he was released, at which time he was returned to the custody of the Pennsylvania Department of Corrections. The Parole Board commenced revocation proceedings and a revocation hearing was held, after which the parolee was recommitted as a convicted parole violator and ordered to serve backtime. The Parole Board denied the parolee's appeal, and he petitioned this Court for review, arguing that his revocation hearing was untimely and that he should have served the backtime on his original state sentence before serving his new federal sentence pursuant to Section 6138(a)(5.1) of the Parole Code. We rejected the parolee's argument, noting there was no dispute in the case that the parolee "was in federal custody both before and after his federal sentencing and when the [Parole] Board received official verification of his conviction." *Brown*, 184 A.3d at 1027. We further explained:

> [The parolee's] argument presumes that the [Parole] Board had the ability to obtain him from federal custody in order to hold a revocation hearing and recommit him as a [convicted parole violator] to serve the remainder of his original sentence in accordance with Section 6138(a)(5.1). However, the [Parole] Board asserts that it does not have the ability to acquire a Pennsylvania parolee from the custody of another jurisdiction in order to recommit the parolee to serve the remainder of the original sentence. [The parolee] has not provided any legal authority that grants the [Parole] Board this authority.

*Id.* (emphasis in original omitted). We concluded, therefore, that the parolee was unavailable to the Parole Board at the time he pled guilty and was sentenced on the federal charges, and he was unavailable when the Parole Board received official verification of his conviction. The Parole Board did not acquire jurisdiction over the parolee until after his release from federal custody.[9] Therefore, we held that the parolee's revocation hearing held 110 days after the date he was returned to an SCI was timely.

Here, as in *Brown*, Williams was in federal custody before and after his federal sentencing and when the Parole Board received official verification of the new conviction on February 8, 2017. Where a parolee is in federal custody, confined in a federal facility, or is otherwise unavailable, the Parole Board may defer a

---

[9] We distinguished *Brown* from *Fumea v. Pennsylvania Board of Probation and Parole*, 147 A.3d 610 (Pa. Cmwlth. 2016), where we did find error by the Parole Board. In *Fumea*, the parolee was arrested on federal charges and posted bond. The Parole Board detained him pending disposition of the federal charges, and he remained in an SCI on the Parole Board's detainer until his release at the expiration of his original maximum sentence date and the lifting of the Parole Board's detainer. The parolee thus remained at liberty from both the Board's detainer and the federal charges while he was awaiting federal trial. The parolee was ultimately convicted of the federal charges, but he remained free on bail until his sentencing. Notably, at his sentencing, the parolee's parole agent was in attendance and the Parole Board issued a detainer warrant the same day. Nevertheless, the parolee was remanded to the custody of the United States Marshal and served his federal sentence until 2014, when he was returned to an SCI. The parolee challenged the timeliness of his revocation hearing, which was held within 120 days of his return to an SCI. We held that the Parole Board could have taken the parolee into custody prior to or at his federal sentencing but did not. As such, we concluded that the Parole Board erred by waiting to hold the parole revocation hearing until after the parolee completed his federal sentence and was returned to an SCI.

The facts of Williams' case are different than those in *Fumea*. Williams did not post bond on the federal charges but remained in federal custody from the time of his arrest by federal authorities until he completed his federal sentence, like the parolee in *Brown*. Moreover, absent from the record is any suggestion that a state parole agent was present at Williams' federal sentencing or that the Parole Board even knew of the federal convictions prior to it receiving official verification of the federal convictions.

11

revocation hearing until the parolee is returned to an SCI and, thus, subject to the Parole Board's jurisdiction. *Brown*, 184 A.3d at 1025. The Parole Board properly deferred Williams' revocation hearing until he was returned to the Parole Board's custody. Williams' second claim lacks merit.

Finally, Williams argues that he did not receive credit for all the time he was detained solely on the Parole Board's warrant.[10] Again, we disagree. Generally, periods of presentence incarceration shall be credited to a convicted parole violator's original sentence only where he has satisfied bail requirements on the new criminal charges and, therefore, remains incarcerated solely on the Parole Board's detainer. *Gaito v. Pennsylvania Board of Probation and Parole*, 412 A.2d 568, 571 (Pa. 1980). Where bail is not posted, the time a parolee spends incarcerated on both the new criminal charges and the Parole Board's detainer must be applied to the parolee's new sentence. *Id.* In *Martin v. Pennsylvania Board of Probation and Parole*, 840 A.2d 299, 309 (Pa. 2003), our Supreme Court held that "where an offender is incarcerated on both a [Parole] Board detainer and new criminal charges, all time spent in confinement must be credited to either the new sentence or the original sentence." Thus, when a parolee is confined on the Parole Board's detainer warrant and has not made bail on the new charges, but the new charges are *nolle prossed*, the parolee is not convicted, no new period of incarceration is imposed, or there is an acquittal, the time spent in pretrial custody must be awarded to the parolee's original sentence. *Martin*, 840 A.2d at 309; *Gaito*, 412 A.2d at 571 n.6 (stating "that if a parolee is not convicted, or if no new sentence is imposed for that

---

[10] Neither the Administrative Remedies Form nor the Petition for Review specify the dates or the number of days for which Williams seeks credit.

conviction on the new charge, the pre-trial custody time must be applied to the parolee's original sentence").

Here, Williams was initially arrested on new charges on July 10, 2001, for which he did not post bail, and the Parole Board issued its warrant on July 12, 2001. Williams remained in custody on the new charges and on the Board's warrant from July 12, 2001, until June 9, 2002, when the Parole Board lifted its warrant and Williams returned to parole. However, in the interim, the new charges were *nolle prossed* on May 24, 2002. Because the new charges did not result in a conviction or a new period of incarceration, the Parole Board properly credited those 332 days of confinement time to Williams' original sentence.

Williams was arrested again on new criminal charges on August 23, 2012, and he did not post bail. The Parole Board lodged its warrant the next day on August 24, 2012, and detained Williams pending disposition of the new charges. The warrant was lifted on October 29, 2012, at the expiration of Williams' original sentence. Thus, from August 24, 2012, through October 29, 2012, Williams remained confined on both the Parole Board's detainer warrant and the new charges. However, the state charges were subsequently transferred to the federal court system and, therefore, never resulted in a state conviction or new period of state incarceration. Accordingly, the Parole Board properly credited Williams 66 days towards his original sentence for the period of August 24, 2012, to October 29, 2012.

Finally, on February 8, 2017, upon its receipt of official verification of Williams' new federal convictions, the Parole Board issued another warrant against Williams. However, Williams was not detained solely on this warrant because he was in federal custody[11] beginning on January 1, 2014, up through the completion

---

[11] It appears that Williams did not post bond on the federal charges.

13

of his federal sentence and his release from federal custody and return to an SCI on March 4, 2020. The federal court awarded Williams credit towards his new federal sentence for all time spent in federal custody on the new federal charges. Williams was not entitled to any further credit against his original sentence. Thus, the Parole Board did not err in its credit calculations, and Williams' third claim of error is meritless.

In sum, Counsel has fulfilled the technical requirements for withdrawing from representation, and our independent review of the record before the Parole Board reveals that Williams' issues on appeal lack merit. Accordingly, we grant Counsel's application to withdraw and affirm the Parole Board's adjudication.

_____
MARY HANNAH LEAVITT, President Judge Emerita

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kenneth Williams,                          :
                    Petitioner             :
                                           :
        v.                                 :    No. 152 C.D. 2021
                                           :
Pennsylvania Parole Board,                 :
                    Respondent             :

# **O R D E R**

AND NOW, this 14th day of December, 2021, the application to withdraw as counsel filed by Kent D. Watkins, Esquire, is GRANTED, and the adjudication of the Pennsylvania Parole Board, dated February 5, 2021, is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge Emerita